IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERTO CARLOS MUNOZ | Case No. 25-mj-382 (JFD) |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Chad Fleming, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation and have been so employed since July of 2009. I am currently assigned to the Minneapolis Field Office in the state of Minnesota. In my current assignment I have personally participated in the investigations of hundreds of alleged violations of the criminal laws of the United States. In particular, I have investigated over a dozen Assault on a Federal Officer crimes. In addition, I have investigated violent crimes including fugitives, armed bank robberies, car-jackings, sexual assaults, attempted murders, threats against persons, shootings, and commercial robberies.

2. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that ROBERTO CARLOS MUNOZ (hereinafter, Munoz) has committed the offense of Assault on a

Federal Officer with a Dangerous or Deadly Weapon and Resulting in Bodily Injury, in violation of 18 U.S.C. §§ 111(a) and (b)(1).

3. The facts set forth in this affidavit are based on personal knowledge obtained as result of my direct participation in this investigation and conversations with other law enforcement officers who are familiar with this investigation. Except where otherwise noted, the information set forth in this affidavit has been obtained by me or provided to me, directly or indirectly, by federal law enforcement agents or other law enforcement officers, who have either direct or indirect knowledge concerning the information. Furthermore, wherever information is attributed to law enforcement officers, or to a law enforcement agency as a whole, and wherever the pronoun "we" is used, I learned the information from speaking with other law enforcement officers and employees and/or by reviewing reports, notes, and other records prepared by them. Because this affidavit is submitted for the limited purpose of establishing probable cause to support the contemporaneously filed application, it does not include each and every fact known to me or to other investigators.

## PROBABLE CAUSE

4. In December 2022, Munoz was charged with repeatedly sexually abusing his 16-year-old stepdaughter, in Hennepin County, Minnesota. Munoz

was ultimately convicted of Fourth-Degree Criminal Sexual Conduct, a felony offense. See Minnesota Case No. 27-CR-22-25757. Munoz is a citizen of Guatemala, not the United States.

5.  At the time of his arrest for sexual abuse, Immigration and Customs Enforcement (ICE) issued a detainer for Munoz. That detainer was not honored by local authorities, and Munoz was released from custody.

6.  On June 17, 2025, multiple federal agencies, including but not limited to the Federal Bureau of Investigation (FBI), Enforcement and Removal Operations (ERO), and Homeland Security Investigations (HSI), attempted to effectuate an immigration arrest of Munoz at his residence in Bloomington, Minnesota. ERO had an administrative warrant for Munoz's arrest due to his unlawful entry into the United States and lack of lawful immigrant status. Agents conducted surveillance of Munoz's residence and, at approximately 8:00 a.m., observed Munoz exit his residence and enter a champagne-colored Nissan Altima. Munoz proceeded to drive away from his residence.

7.  Agents followed Munoz away from his residence and conducted a traffic stop. An FBI agent activated his emergency lights behind Munoz. Munoz did not immediately pull over. A civilian vehicle began pulling out of a residential driveway in front of Munoz's vehicle, causing Munoz to slow down.

A vehicle driven by an ERO officer who is the victim in this case ("the ERO Officer"), then pulled diagonally in front of Munoz's vehicle in an attempt to force Munoz to stop. At that point, Munoz's vehicle came to a stop.

8. Both the ERO Officer and an FBI agent parked to the rear of Munoz's vehicle exited their own vehicles to make contact with Munoz. The ERO Officer verbally identified himself as a federal law enforcement officer. The ERO Officer was also wearing a ballistic vest bearing a large placard on the front that identified him as "POLICE."



9. Due to Munoz's refusal to pull over, both the ERO Officer and the FBI agent initially had their service weapons drawn and pointed at Munoz. Munoz raised his hands, and the ERO Officer holstered his sidearm. The FBI agent kept his service weapon drawn but pointed down.

10. The ERO Officer approached the driver's side window of Munoz's vehicle and commanded Munoz to place the vehicle in park. The ERO Officer

gave this order in both English and Spanish. Munoz refused to place the vehicle in park, but he did lower the driver's side window approximately one-third of the way down. The ERO Officer asked Munoz to provide written identification. Munoz held his identification document up to the window, and The ERO Officer confirmed that it belonged to Munoz. After showing his identification document to the ERO Officer, Munoz placed the vehicle in park.

11. The ERO Officer then commanded Munoz to lower his window all the way down and to open the driver's-side door. Munoz refused these commands. The ERO Officer unholstered his taser with his left hand and pointed it at Munoz's chest. Munoz continued to refuse the ERO Officer's commands to lower the window and open the door. The ERO Officer warned Munoz that he would break a window if Munoz continued to refuse. The ERO Officer's commands were made in both English and Spanish. The ERO Officer determined from Munoz's responses that Munoz could understand English.

12. Upon Munoz's repeated refusal to comply, the ERO Officer took out his spring-loaded window punch with his right hand and broke the driver's-side rear window of Munoz's vehicle. The ERO Officer broke the rear window instead of the front window to avoid covering Munoz in broken glass. The ERO Officer then reached into Munoz's vehicle with his right hand and attempted

to unlock the driver's-side door. The ERO Officer's taser remained pointed at Munoz.



13. While the ERO Officer's right arm was inside the vehicle, Munoz put the vehicle in drive. Munoz turned the wheel to the right to avoid the vehicle in front of him, drove up on the curb, and accelerated away at a high rate of speed. The ERO Officer's right arm was caught in the vehicle. As Munoz fled, the ERO Officer was dragged along with the vehicle as Munoz drove away.



14.     While he was caught in the moving vehicle, the ERO Officer fired his taser at Munoz, striking Munoz with both prongs. The taser triggered at least twice, delivering a five-second electric charge to Munoz both times. Munoz was undeterred; he continued driving away as the ERO Officer screamed.

15.     After Munoz drove around the ERO vehicle parked in front of him, he reentered the street and began weaving back and forth, in an apparent effort to shake the ERO Officer from the vehicle. Munoz first drove all the way to the left side of the street. He then turned back to the right and drove up on the curb again to weave past a vehicle parked along the right side of the road.



16.    In total, Munoz dragged the ERO Officer approximately 100 yards down the street, past several houses. When Munoz got off the curb and reentered the street, the force of reentering the street knocked the ERO Officer free from the car. The ERO Officer was then able to remove his arm from the vehicle and fall into the street. After the ERO Officer extricated himself from the vehicle, Munoz continued to flee in his vehicle.



17.  Once the ERO Officer was free from the vehicle, he checked to confirm that he still had his service weapon and magazine. He noticed that he no longer had possession of his taser, which was hanging out the window of Munoz's vehicle.

18.  The ERO Officer also noticed that he was bleeding. An FBI agent on scene applied a tourniquet to the ERO Officer's right arm and rendered medical assistance. An agent on scene called 911 to request medical attention for the ERO Officer. The ERO Officer then called 911 and separately spoke to an individual from the Bloomington Police Department. Bloomington Police informed the ERO Officer that they had just received a call from an individual at 8147 14th Ave. in Bloomington, Minnesota, claiming he was just assaulted

by Immigration and Customs Enforcement (ICE). The ERO Officer asked Bloomington Police to detain that individual.

19. Bloomington Police officers were dispatched to Munoz's location, where he was taken into custody. Munoz had traveled approximately one mile from the location where he dragged the ERO Officer.

20. The ERO Officer was eventually transported to the hospital, where he received treatment for injuries sustained from being dragged by Munoz.



21. The ERO Officer suffered a significant cut to his right arm that required 20 stitches to close.



22. The ERO Officer suffered a significant cut to his left hand that required 13 stitches.



23. The ERO Officer also suffered abrasions to his left knee, elbows, and face.

## CONCLUSION

24. Based on the foregoing, I submit there is probable cause to believe that on or about June 17, 2025, Munoz did forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services), that is, the ERO Officer, while such officer or employee was engaged in or on account of the performance of official duties. I further submit there is probable cause to believe that, in the commission of such acts, Munoz used a deadly or dangerous weapon, that is, a motor vehicle, and inflicted bodily injury to the ERO Officer.

25. Thus, there is probable cause to believe that Munoz engaged in Assault on a Federal Officer with a Dangerous or Deadly Weapon and Resulting in Bodily Injury, in violation of 18 U.S.C. §§ 111(a)(1) and (b)(1). Accordingly, I request a warrant issue for the arrest of Roberto Munoz, that he may be brought before this Court. The foregoing is true to the best of my knowledge and belief.

Further your Affiant sayeth not.

_____
Special Agent Chad M. Fleming
United States Department of Justice
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me
by reliable electronic means (Facetime and
email) pursuant to Fed. R. Crim. P. 41(d)(3)
on June 17, 2025

_____
THE HONORABLE JOHN F. DOCHERTY
UNITED STATES MAGISTRATE JUDGE