UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 25-CR-246 (JMB/SGE)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ROBERTO CARLOS MUÑOZ-
GUATEMALA,

        Defendant.

**RESPONSE IN OPPOSITION TO POST-TRIAL MOTION FOR DISCOVERY**

The United States of America, by and through its attorneys, respectfully opposes defendant Roberto Carlos Muñoz-Guatemala's motion for discovery. The defendant fails to identify any legal authority authorizing post-trial discovery at all, let alone discovery of the broad swath of materials identified in his motion. Moreover, even if the defendant had any right to post-trial discovery—which he does not—none of the materials or information identified in his motion would have any material bearing on the case. As further explained below, the Court should deny the defendant's motion in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2025, a Grand Jury in the District of Minnesota returned an indictment charging the defendant with one count of assault on a federal officer with a dangerous or deadly weapon and resulting in bodily injury. (ECF No. 4.) One week later, Magistrate Judge Elkins issued a pretrial scheduling

and case management order setting forth, among other things, deadlines for pretrial motions. (ECF No. 14.) The defendant filed a motion for disclosure of grand jury materials on August 12, 2025, but he withdrew that motion on September 12, 2025. (ECF Nos. 26, 29.) The defendant filed no other pretrial motions. Nor, as defense counsel conceded at the status conference on January 15, 2026, did the defendant ever request any additional records or information about Enforcement and Removal Operations Officer Jonathan Ross's training. (ECF No. 90.)

In advance of trial, the government moved in limine to preclude the defendant from asserting a theory of self-defense to the jury. (ECF No. 45.) In response, the defendant clarified that he "has not asserted the affirmative defense of self-defense and does not intend to offer evidence that he acted in self-defense. In other words, the defendant does not intend to argue that he committed an assault but that the force was legally justified." (ECF No. 52 at 1.) On December 10, 2025, following a three-day trial, a jury returned a guilty verdict as to the sole count of the indictment. (ECF No. 72.)

On January 7, 2026, Renee Good was shot and killed in Minneapolis. Media reports later identified the person who shot Ms. Good as ERO Officer Ross. The defendant subsequently filed a motion for discovery on February 6, 2026, requesting ERO Officer Ross's "full law-enforcement training file" as well

as "the full investigative file related to ERO Jonathan Ross' shooting of Renee Nicole Good on January 7, 2026." (ECF No. 102.)

## ARGUMENT

### I.    The defendant is not entitled to post-trial discovery.

"Criminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000). "In most circumstances, then, a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Id.*

The defendant fails to identify any legal authority entitling him to post-trial discovery. He does not, for example, suggest that he has any right to post-trial discovery under Rule 16. That is unsurprising because Rule 16's discovery obligations apply "before and during trial." Fed. R. Crim P. 16(c). "Rule 16 pertains only to pretrial discovery." *United States v. McLaughlin*, 279 F. App'x 856, 858 (11th Cir. 2008). "Nothing in the rule grants the district courts the authority to enforce the rule long after the criminal case has concluded." *United States v. Felix*, 298 F. App'x 905, 906 (11th Cir. 2008); *see also United States v. Vasquez Rijos*, 119 F.4th 94, 131 (1st Cir. 2024) (noting that no legal authority requires or authorizes post-trial discovery).

The government is unaware of any case in which the Eighth Circuit has recognized a defendant's right to obtain discovery from the government in support of a motion for new trial under Rule 33. The defendant cites none.

3

Absent any specific entitlement to post-trial discovery, the Court should deny the defendant's motion for discovery without further analysis.

## II. Even if the defendant was entitled to discovery in support of a motion for a new trial, the defendant has failed to show that the requested discovery would very likely contain information justifying a new trial.

Although it does not appear the Eighth Circuit has endorsed additional fact discovery to support a motion for new trial, some courts recognize the availability of post-trial discovery in rare instances. Even those courts that recognize the availability of post-trial discovery, however, emphasize that the defendant bears the burden of demonstrating—beyond mere speculation—that the requested discovery is likely to entitle him to a new trial.

In *United States v. Velarde*, for example, the Tenth Circuit held that courts may permit discovery in support of a motion for new trial under Rule 33 where the defendant "is able to make a showing" that further discovery would "*very likely* lead to the discovery" of evidence demonstrating the defendant is entitled to relief. 485 F.3d 553, 560 (10th Cir. 2007) (emphasis added). The defendant must make "specific allegations" that "show reason to believe that [the defendant] may, if the facts are fully developed, be able to demonstrate that he is entitled to a motion for a new trial." *Id.* Discovery is not permitted if it is a "mere fishing expedition based on the defendant's mere hopes of finding exculpatory evidence." *Id.* at 561. Consequently, "the standard

governing these motions for discovery is a high one, and discovery is to be granted only in a 'rare class of cases.'" *United States v. Silva-Arzeta*, No. 06-CR-120-TCK, 2007 WL 2344937, at *8 (N.D. Okla. Aug. 16, 2007) (quoting *Velarde*, 485 F.3d at 561).

The Fifth and Eleventh Circuits agree that post-trial discovery may be appropriate in some limited instances. *See United States v. Kallen-Zury*, 710 F. App'x 365, 370 (11th Cir. 2017); *United States v. Bankston*, 31 F. App'x 160, 2001 WL 1751478, at *3 (5th Cir. Dec. 28, 2001). Like the Tenth Circuit, these other courts agree that post-trial discovery is not appropriate when "based upon mere speculation that it could produce helpful information." *Kallen-Zury*, 710 F. App'x at 370; *see also Bankston*, 2001 WL 1751478, at *3 (concluding that a defendant is "not entitled to discovery when his request is supported only by speculation as to what he might find"). A defendant has "no right to rummage in government files" to support a motion for new trial—the need for discovery must be specific, as opposed to merely speculative or conclusory. *Id.*

As noted above, there must be some legal authority entitling a defendant to discovery. In light of the defendant's failure to identify any legal authority supporting his request for post-trial discovery, the Court's inquiry should end there. However, even if the Court were to apply the standard adopted by the Fifth, Tenth, and Eleventh Circuits, the defendant is still not entitled to the requested discovery for the reasons stated below.

5

**A.    The Defendant is foreclosed from seeking discovery regarding Officer Ross's training file because he has failed to show that the training file is "newly discovered evidence" that would be material to his guilt.**

The first category of discovery sought by the defendant's motion is Officer Ross's training file.  The defendant, however, has utterly failed to show that the information in the training file would very likely entitle him to a new trial under Rule 33.

In order to be entitled to a new trial based on newly discovered evidence, a defendant "must show (1) the evidence was unknown or unavailable at the time of trial; (2) [the defendant] was duly diligent in attempting to uncover the evidence; (3) the newly discovered evidence is material; and (4) the newly discovered evidence is such its emergence probably will result in an acquittal upon retrial." *United States v. Meeks*, 742 F.3d 838, 840 (8th Cir. 2014). "Evidence is not newly discovered when the evidence could have been discovered earlier in the exercise of due diligence." *United States v. Lazzaro*, 129 F.4th 514, 531 (8th Cir. 2025) (quotation omitted). "Rule 33 does not authorize district courts to grant new trials on the basis of such evidence since it is not newly discovered, but merely newly available." *United States v. Bell*, 761 F.3d 900, 912 (8th Cir. 2014). In order to meet the materiality requirement for a new trial, newly discovered evidence must also be more than merely impeaching. *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007).

6

Here, Officer Ross's training file cannot support a motion for a new trial for several reasons and therefore is not discoverable. First, the file is not "newly discovered evidence" for purposes of a new trial motion. The records pertaining to Officer Ross's training at the time the defendant assaulted him existed before the defendant's trial. The defendant could have requested the training records from the government, or made a pretrial motion to the court seeking to compel their disclosure, but he did not. Having failed to make any effort to obtain the training file before trial, such records cannot, as a matter of law, justify a new trial based on newly discovered evidence. *See, e.g.*, *United States v. Johnson*, No. 16-CR-193 (WMW/BRT), 2019 WL 1036001, at *2 (D. Minn. Mar. 5, 2019) (denying motion for new trial based on "documents that existed before [the defendant's] trial commenced").

Second, the defendant has failed to show that the contents of Officer Ross's training file are likely to be material. *See United States v. Rubashkin*, 655 F.3d 849, 858 (8th Cir. 2011) (holding that Rule 33 "*requires* that the newly discovered evidence probably will result in an acquittal"). Indeed, the defendant fails to provide any specific allegation of what he believes the training file will show. Rather, the defendant's request for Officer Ross's training file is, on its face, a fishing expedition. The defendant claims that, because it is "unclear whether improper training resulted in the shooting of Good, a question also arises as to whether or not Ross was following his

7

training during his interactions with the [d]efendant." (ECF No. 102 at 15.) A mere allegation that Officer Ross might not have been following his training, however, is speculative. Moreover, materiality requires more than a conclusory allegation that the officer might not have been following his training. The defendant must explain how the officer's failure to follow his training was relevant to an element of the offense or was otherwise inconsistent the government's proof of guilt. Without such a showing, the training records could only be offered to impeach Officer Ross's testimony about how he acted during the traffic stop, and impeachment alone cannot be the basis for a new trial.

Thus, the defendant is explicitly speculating that Officer Ross's training file could "produce helpful information," *Kallen-Zury*, 710 F. App'x at 370, and he merely *hopes* to find exculpatory information in Officer Ross's training records, *see Bankston*,2001 WL 1751478, at *3. Such a speculative request for post-trial discovery does not pass muster. Even assuming post-trial discovery in support of a motion for a new trial is available in the Eighth Circuit, the defendant's request for Officer Ross's training file does not clear the high bar for such requests adopted by other federal courts. This Court should deny the defendant's request for Officer Ross's training file in its entirety.

**B.     The defendant is not entitled to discovery of any kind related to the death of Renee Good because he has failed to establish that the discovery would be admissible and material to his guilt.**

Just as he failed to identify any legal authority authorizing post-trial discovery of training records, the defendant again fails to identify any legal authority requiring the government to disclose, after trial, investigative materials related to Renee Good's death on January 7, 2026. Instead, he simply argues these materials are necessary to assess what defenses he could assert at a new trial.

Assuming for the sake of argument that evidence of an incident that had not yet happened at the time of the defendant's trial can be "newly discovered" under Rule 33, the defendant has failed to show that information from the investigation of the January 7th shooting is both material and likely to result in an acquittal upon retrial. Rather, just like his request for Officer Ross's training file, the defendant's request for the "full investigative file" related to Renee Good's death is based purely on speculation and is an impermissible fishing expedition. The defendant concedes that he has "no idea what the federal investigation will show" and that "he is unable to assess all the potential uses of that evidence in a defense at a new trial." (ECF No. 102 at 9, 13.) He also speculates that, "[p]resumably . . . Ross was interviewed" about the shooting and what happened afterwards. (*Id.*) Essentially, the defendant

requests the "full investigative file" so he can review it in the hope that it *might* contain additional materials that *might* be helpful in a new trial. Again, the defendant wishes to "rummage in government files," which is not a permissible use of post-trial discovery to support a motion for new trial. *See Bankston*, 2001 WL 1751478, at *3; *see also Kallen-Zury*, 710 F. App'x at 370 (holding that post-trial discovery is not appropriate when "based upon mere speculation that it could produce helpful information"). The defendant has not cleared the high bar to conduct post-trial discovery in support of a motion for new trial, and the Court should deny his motion on that basis alone.

At most, the defendant claims information from the investigative file of the January 7th shooting may help establish Officer Ross's "aggressive intent." (ECF No. 102 at 10.) Even if the Court were to assume the investigative file contained evidence of Officer Ross's "aggressive intent" (as the defendant speculates) such evidence still would not be material such that it could support a successful motion for new trial. It is axiomatic that in order for evidence to be material or likely to result in an acquittal on retrial, it must be *admissible*, because inadmissible evidence obviously cannot affect the outcome of a proceeding. *See*, *e.g.*, *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (no reasonable likelihood of inadmissible polygraph test resulting in a different outcome at trial); *United States v. Chappell*, 990 F.3d 673, 678 (8th Cir. 2021) (inadmissible allegations of witness impairment could not support a motion for

a new trial); *United States v. Holmes*, 421 F.3d 683, 688 (8th Cir. 2005) (inadmissible hearsay could not support new trial).

The defendant claims that information from the investigative file might be admissible under Rule 404(b) and Rule 405. Here, even granting the defendant's speculative assertion that the investigative file will contain evidence of Officer Ross's "aggressive intent" in shooting Good, such evidence would not be admissible under either Rule 404 or 405 in a trial about the defendant's assault on Officer Ross months earlier.

> **1.    The defendant has failed to establish that the information from the investigative file would admissible under Rule 404.**

With respect to Rule 404, the evidence sought by the defendant would be inadmissible for two main reasons. First, evidence of the shooting or Officer Ross's "aggressive intent" could not be offered for a permissible purpose. Rule 404 provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person in acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Nor is evidence of any other act "admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

Evidence demonstrating a person's "aggressive intent," or an intent to behave aggressively, is character evidence. The defendant would offer it to

show that Officer Ross is an aggressive person who acted in an aggressive manner on January 7th and therefore must have acted aggressively when he interacted with the defendant six months earlier. Such evidence is classic character evidence offered for a propensity purpose and is therefore inadmissible under Rule 404(a)(1). The defendant contends generally that the evidence could be relevant to show Officer Ross's "motive or intent" when he interacted with the defendant. But "merely reciting those permissible purposes without more is not sufficient" to render evidence admissible under the rule. *United States v. Cotton*, 823 F.3d 430, 434 (8th Cir. 2016). Rather, the proponent of the evidence "must identify the permissible non-propensity purpose for the evidence, and must articulate the relationship" between the evidence and "a material issue in the case." *Id.* The defendant has failed to articulate any non-propensity connection between the defendant's intent on January 7th and his intent when he interacted with the defendant six months earlier. And even if he could articulate such a non-propensity purpose, he has likewise failed to establish the evidence would be of such strength that the jury would have been likely to acquit him.

Second, even if the defendant could articulate a logical link between Officer Ross's intent on January 7th and his "motive or intent" on the day defendant assaulted him, the potential prejudice of this 404(b) evidence substantially outweighs its probative value. *United States v. Banks*, 706 F.3d

12

901, 906–07 (8th Cir. 2013). As noted above, evidence related to the January 7th shooting would have no probative value at all—it would only demonstrate Officer Ross's supposedly aggressive character. Admission of evidence related to that shooting would also be enormously prejudicial. Evidence under 404(b) is not admissible if it would distract the jury or turn the trial into a mini-trial regarding the 404(b) evidence. *See United States v. Battle*, 774 F.3d 504, 514 (8th Cir. 204) (affirming exclusion of reverse 404(b) evidence that the defendant sought to introduce because "any minimal probative value . . . was outweighed by the risk of distracting in conducting mini trials on the detailed facts underlying the . . . offenses [the defendant] sought to introduce").

Permitting the jury to hear evidence about Officer Ross's involvement in the January 7th shooting, an event that received international publicity, led to protests across the country and in other countries, and became a topic of major public debate, would undoubtedly shift the jury's focus away from its proper role—determining the defendant's guilt—and turn it into a trial of Officer Ross for his conduct six months after the defendant dragged Officer Ross over 300 feet with his car. Because evidence of Officer Ross's involvement in the January 7th shooting would not be admissible at the defendant's trial under Rule 404(b), it cannot entitle him to a new trial. *See Velarde*, 485 F.3d at 560 (permitting discovery in support of a motion for new trial where the defendant

"is able to make a showing" that further discovery would "*very likely* lead to the discovery" of evidence demonstrating the defendant is entitled to relief).

> **2.    The defendant has failed to establish that the information from the investigative file would be admissible under Rule 405.**

The defendant has likewise failed to show that evidence from the investigation of the January 7th shooting would be admissible under Rule 405 either.  The defendant claims that permitting discovery of that shooting would potentially allow him to develop a defense that, "even if he did know Ross was a law enforcement officer, he used reasonable force to resist excessive force against a law enforcement officer who was the aggressor."  (ECF No. 102 at 11.)  He argues that a jury must be made aware of Officer Ross's conduct during the January 7th shooting "in its assessment of the reasonableness of [the defendant]'s decisions."  (*Id.* at 12.)

While a defendant can raise defenses in the alternative, the defendant previously disclaimed any intent to raise self-defense at trial.  (ECF No. 52 at 1.)  Then, the defendant testified under oath at trial that he did not know Officer Ross was a law enforcement officer.  He cannot now walk back his sworn testimony and claim that, in reality, he did know Officer Ross was a law enforcement officer all along but that he acted in self-defense.  Any facts relevant to any self-defense claim, namely whether he could have reasonably believed *at the time of the traffic stop* that it was necessary to protect himself

14

from unlawful physical harm, was known to him at the time he assaulted Officer Ross.  *See United States v. Davidson*, 108 F.4th 706, 710 (8th Cir. 2024) (noting that self-defense requires a jury to find that the defendant "used such force that he reasonably believed was necessary to protect himself from unlawful physical harm about to be inflicted upon him by another").  Officer Ross's involvement in a shooting that occurred in January 2026 could not have been known to the defendant in June 2025, meaning it cannot be relevant to a claim of self-defense.

The caselaw cited by the defendant demonstrates the irrelevance of the January 7th shooting to any purported self-defense claim.  In *United States v. Bordeaux*, the Eighth Circuit explained that evidence of a victim's "prior bad acts," as well as reputation testimony regarding the victim's character, can be pertinent to a defendant's state of mind, the reasonableness of the defendant's use of force, or to show that the victim may have been the aggressor.  570 F.3d 1041, 1049 (8th Cir. 2009).  However, the appellate court ultimately affirmed the exclusion of other acts evidence where the defendant had no personal knowledge or awareness of those acts at the time he purportedly acted in self-defense.  *Id.* at 1050.  The court explained that "[p]rior acts cannot provide insight" into the defendant's state of mind or the reasonableness of his use of force if the defendant "himself was unaware of the acts." *Id.*  Here, Officer Ross's conduct on January 7, 2026, could not have been known to the defendant

15

in June 2025, meaning it cannot support a claim of self-defense.  *See also United States v. Gregg*, 451 F.3d 930, 935 (8th Cir. 2006) ("Evidence of specific instances of a victim's prior violent conduct for purposes of proving a defendant's state of mind . . . is only admissible to the extent a defendant establishes knowledge of such prior violent conduct at the time of the conduct underlying the offense charged.").

The defendant fails to identify any reason that evidence of Officer Ross's conduct in relation to the January 7th shooting of Renee Good could be admissible at a new trial.  Consequently, the Court should not permit the defendant any discovery related to the events of January 7, 2026, in connection with any purported motion for new trial.

## III. The defendant is not entitled to additional discovery to support mitigation arguments at sentencing.

Finally, the defendant argues that even if the Court determines he is not entitled to additional discovery to support a motion for new trial, he is still entitled to the requested materials to support mitigation arguments at sentencing.  (ECF No. 102 at 16-17.)  He asserts that "[e]specially important to a sentencing analysis will be the danger Ross presented to Defendant in June of 2025 as well as the reasonableness of Defendant's decision to leave the scene." (*Id.* at 18.)

16

Again, the defendant fails to cite any legal authority entitling him to post-trial discovery at all, let alone to support sentencing mitigation arguments. The only potential legal basis of which the government is aware is *Brady*, which requires the government to provide evidence "material to the issue of guilt or punishment." *United States v. Williams*, 194 F.3d 886, 889 (8th Cir. 1999). The defendant bears the burden to establish entitlement to evidence under *Brady*. *United States v. Van Brocklin*, 115 F.3d 587, 594 (8th Cir. 1997). To meet that burden, the defendant must establish that the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeachment." *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

As to Officer Ross's training file, the defendant offers nothing to establish that the training records include exculpatory information. With respect to the January 7th shooting, Officer Ross similarly acknowledges that he does not know what the "full investigative file" might contain. The defendant provides only baseless speculation, meaning he cannot meet his burden to show any entitlement under *Brady*. *United States v. Brown*, 360 F.3d 828, 833 (8th Cir. 2004) ("Mere speculation that materials may contain exculpatory evidence is not sufficient to sustain a *Brady* claim.") (cleaned up).

Moreover, nothing in the "full investigative file" could be material to sentencing because the Court already has a complete picture of what took place in June 2025, from both Officer Ross's and the defendant's perspectives.

Officer Ross testified about how the traffic stop proceeded, and the defendant testified as to his version of events and his state of mind.  Even if the Court were to consider the factors listed in U.S.S.G. § 5K2.10 (which was deleted from the Federal Sentencing Guidelines in 2025), none of those establish the materiality of the events of January 7, 2026.  That section refers to the victim's "reputation for violence," but only in the context of the "danger reasonably perceived by the defendant."  U.S.S.G. § 5K2.10(3).  The events of January 2026 could not have impacted the defendant's perception in June 2025, rendering the subsequent shooting immaterial.

That section also references "[a]ny other relevant conduct by the victim that substantially contributed to the danger presented."  *Id.* at § 5K2.10(5).  Again, Officer Ross's conduct in January 2026 could not have contributed to the danger presented in June 2025.

Finally, to the extent the defendant wishes to reference the events of January 7, 2026, for sentencing purposes, there is already a wealth of material available to him.  As the defendant acknowledges, the January 7th shooting was captured on video from multiple angles, including a video that captured the officer's perspective of the shooting and what was said immediately afterwards.  *United States v. Anwar*, 880 F.3d 958, 969 (8th Cir. 2018) (no *Brady* violation based on failure to disclose evidence that is cumulative of evidence already available to the defendant).

18

The defendant has failed to demonstrate any entitlement to the requested discovery for sentencing purposes, and the Court should reject this argument in support of his discovery motion as well.

## **CONCLUSION**

The defendant's motion for discovery is without any basis in law or fact, and the Court should deny the motion in its entirety.

Dated: February 23, 2026                    Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

*/s/ Raphael B. Coburn*
BY:   Raphael B. Coburn
Assistant U.S. Attorney

19